AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Middle District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. 8:15 MJ 1119 TGW |
| SHAWN PAUL HENDRICKS, | ) | |
| VLADIMIR CASTANEDA, | ) | |
| and | ) | |
| JOSE EDGAR GONZALEZ-CASTANEDA | ) | |
| | ) | |
| _Defendant(s)_ | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___2014 through February 20, 2015___ in the county of ___Hernando___ in the

___Middle___ District of ___Florida, and elseshwere___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 841(a)(1), 846 and 841(b)(1)(B) | Conspiracy to distribute and possess with the intent to distribute 500 grams or more of methamphetemine, a Schedule II Controlled Substance |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
_Complainant's signature_

G. Tucker Cowles, Special Agent, DEA
_____
_Printed name and title_

Sworn to before me and signed in my presence.

Date: ___FEBRUARY 20, 2015___

_____
_Judge's signature_

City and state: ___Tampa, Florida___

THOMAS G. WILSON, U.S. MAGISTRATE JUDGE
_____
_Printed name and title_

8:15 M.J 1119 TGW

## AFFIDAVIT IN SUPPORT OF A COMPLAINT

I, G. Tucker Cowles, being duly sworn, state as follows:

1.     I am a Special Agent with the Drug Enforcement Administration (DEA), currently assigned to the Tampa District Office.  I have been a law enforcement officer for 15 years.  During this time I have participated in criminal investigations involving local, national and international drug trafficking organizations.  I have worked with other federal, state, and local agencies in the conducting these investigations.  In connection with my official DEA duties, I investigate criminal violations of federal laws, including but not limited to, Title 21, United States Code, Sections 841(a)(1), 843(b) and 846 (drug trafficking offenses).  During my tenure with the DEA I participated in hundreds of investigations of drug trafficking offenses including involving cocaine and, among other things, have conducted or participated in surveillance, the execution of search warrants, debriefings of informants and reviews of taped conversations.  As a Special Agent, I have received specialized training in the investigation of narcotics related crimes and have participated in the investigation of complex drug conspiracies and all stages of illegal narcotics distribution, including dozens of investigations relating to the distribution and the sale of controlled substances, including methamphetamine.  As such, I am familiar with the methods, routines and practices of narcotics traffickers, as well as the appearance and characteristics of controlled substances and the methods in which they are used, packaged for sale and distributed.

2.     This affidavit is submitted for the limited purpose of establishing probable cause for the arrest of Shawn Paul HENDRICKS, Jose Edgar GONZALEZ-CASTANEDA, and Vladimir CASTANEDA for conspiracy to distribute 500 grams or more of

methamphetamine, contrary to Title 21, United States Code, § 841(a)(1), All in violation of Title 21, United State Code, Sections 846 and 841(b)(1)(A). It does not set forth all facts known to your affiant or other law enforcement personnel about this referenced investigation.

3.  The statements contained herein are made on the basis of first-hand knowledge, and information obtained from other law enforcement officers.

4.  During July of 2014 an investigation began into the drug trafficking activities of now cooperating defendant Shawn Paul HENDRICKS. During this time period information was received by multiple independent sources that HENDRICKS was trafficking in multi-pound quantities of methamphetamine. Information received indicated these multi-pound quantities were sold on a weekly basis. This information was corroborated by surveillance, controlled purchases of methamphetamine from co-conspirators, recordings, and phone toll analysis. On or about October 30, 2014, confidential Source 1 (CS-1) was arrested in possession of two ounces of methamphetamine. CS-1 gave post *Miranda* statement that he/she had distributed methamphetamine for HENDRICKS. He/She purchased 1/2 pound quantities of methamphetamine from HENDRICKS every other day for a total of 3 pounds a week over for a period of time in late 2014. CS-1 estimated that he/she had purchased a total of 21 pounds of methamphetamine from HENDRICKS over that period. CS-1 further stated he/she had picked up four ounces of methamphetamine from HENDRICKS the morning that he/she had been arrested (October 30, 2014), and that he (HENDRICKS) had stated that he had just received a load that morning of seven pounds of methamphetamine from Atlanta. Phone toll analysis identified numerous contacts between CS-1 and

HENDRICKS.

5.    During January of 2015, another confidential source, CS-2, made a post *Miranda* statement that he/she had been purchasing 1/2 to 1 pound quantities of methamphetamine from HENDRICKS every four days during the month of October of 2014.  CS-2 stated that CS-1 had on occasion delivered the methamphetamine to CS-2 at CS-1's house on behalf of HENDRICKS.  CS-1 had also given CS-2 money to be taken back to HENDRICKS that had been owed for prior transactions.  Phone toll analysis identified numerous contacts between CS-2 and HENDRICKS.

6.    On February 18, 2015, DEA and the Pasco County Sheriff's Office (PCSO) were conducting surveillance in the Pasco County area when they saw a 2008 Gray BMW registered to HENDRICKS.  A traffic stop was attempted, but HENDRICKS fled and subsequently was arrested for fleeing to elude law enforcement.  Before his arrest, HENDRICKS had gone into his girlfriend's house in Dade City, where he had attempted to hide.  The girlfriend gave written consent to search the residence and advised there was marijuana inside the residence and a gun on the night stand.  She further advised that there was a safe inside the residence that belonged to HENDRICKS.  She gave consent to search the safe.  She opened the safe and inside was located approximately $50,000 in United States Currency and a pistol.  The girlfriend stated that the money had belonged to HENDRICKS.

7.    HENDRICKS was advised of his *Miranda* Rights and agreed to talk to authorities.  He stated the money inside the safe was his and that it was drug proceeds. He stated that he had been selling methamphetamine for a long time.  He stated that he would receive 10-15 pounds of methamphetamine on a weekly basis from a source of

supply from Atlanta with a co-conspirator in the Ocala, Florida area. These transactions would take place in the Ocala. HENDRICKS stated he would pay up front for the methamphetamine. HENDRICKS stated he would pay $18,000 per kilogram for the methamphetamine. HENDRICKS stated he would call the source of supply named "V-MAN", (later identified as Vladimir CASTANEDA), when CASTENEDA was enroute from Atlanta with the methamphetamine. HENDRICKS would then travel to Ocala and pick up his portion of the load. This took place on at least twenty occasions over the past year. The last occasion was within the past week. HENDRICKS stated that he and another individual would purchase anywhere from 10 to 15 pounds of methamphetamine at a time from CASTANEDA, who would deliver it to a residence in Ocala.

8.    HENDRICKS stated that he was to receive a multi-pound load of methamphetamine from CASTENEDA on February 19, 2015, at approximately 8:00 p.m. On February 19, 2015, HENDRICKS made recorded telephone call to CASTENEDA. CASTENEDA stated he was in route and would be arriving in Ocala between 8:00-9:00 p.m.. At approximately 7:30 p.m., HENDRICKS received a telephone communication from CASTENEDA. CASTENEDA asked HENDRICKS "where he was at..." CASTENEDA instructed HENDRICKS to meet him in the vicinity of Highway 484 west of I-75 on the side of the road.

9.    Controlling investigators searched HENDRICKS' person and vehicle for contraband and none was found. He was then provided recording equipment and drove to the meet location. Surveillance units observed HENDRICKS meet with two vehicles on a side road. One was described as an older model station wagon and the other was a Ford F-150 truck. Surveillance units reported that those were the only vehicles in the

area.   The meeting took place for less than five minutes and then they separated. HENDRICKS was followed by controlling investigators to a pre-determined meet location. HENDRICKS turned over approximately four (4) kilograms of a substance that field tested positive for the presence of methamphetamine.   HENDRICKS stated he had received the drugs from CASTENEDA.   He further stated the person in the other vehicle, a Ford F-150 truck, was CASTENEDA's uncle.

10.   Meanwhile, surveillance units followed both vehicles to a residence in Eustis, Florida where the two individuals were arrested.   The individual driving the station wagon at that time was identified as Jose Edgar GONZALEZ-CASTANEDA.   Located inside the station wagon where HENDRICKS stated he had gotten the drugs was an additional approximately five (5) kilograms of a substance that field tested positive for the presence of methamphetamine.

11.   GONZALEZ-CASTANEDA was advised of his *Miranda* Warnings, and agreed to talk to authorities.   He stated that CASTENEDA was his nephew.   He stated CASTENEDA had paid him $500 to drive the vehicle with the methamphetamine in it and that CASTENEDA was the "chase" vehicle to assure nothing happened to the methamphetamine.   He stated both of them had traveled to Georgia at 6:00 a.m. that morning to pick up the meth.   He stated they had gone to an apartment to pick it up.   He stated they both returned to the Ocala area to give a portion of the load to an individual there.   He stated his nephew had given the methamphetamine to an individual in a BMW (HENDRICKS).

12.   CASTENEDA was advised of his *Miranda* Warnings and agreed to talk to authorities.   He stated he had been selling methamphetamine and that he knew the

drugs were in the other vehicle.   He stated that his source of supply was in Ocala and was named "Shawn".   He stated he had picked up the methamphetamine the previous day.   He stated he lived at the Eustis residence in a back room.   He gave consent to search the residence.   Located in the room was a pay stub with his name on it.   Further contained in the room was a container consistent with packaging of the aforementioned seized methamphetamine.   Located on the dresser in plain view was a towel with a substance that field tested positive for the presence of methamphetamie.   A small notebook was also located that contained writing consistent with drug ledgers.

Based upon the information contained in this affidavit, your Affiant submits that there is probable cause to believe that Shawn Paul HENDRICKS, Jose Edgar GONZALEZ-CASTANEDA, and Vladimir CASTANEDA, did knowingly and willfully conspire with others to distribute and possess with intent to distribute 500 grams or more of methamphetamine.

FURTHER AFFIANT SAYETH NAUGHT.

G. Tucker Cowles, Special Agent
Drug Enforcement Administration

Subscribed and sworn before me
this ___ day of February, 2015

THOMAS G. WILSON
United States Magistrate Judge